CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
November 05, 2026
LAURA A. AUSTIN, CLERK
BY: /s/L. Ayers
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| MICHAEL HALASSA, MD, Ph.D., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:26-cv-00200 |
| | ) | |
| v. | ) | |
| | ) | By: C. Kailani Memmer |
| STEFAN OLINE, | ) | United States Magistrate Judge |
| | ) | |
| Defendant. | ) | |

# ORDER

In this defamation case, plaintiff Michael Halassa, MD, Ph.D. issued a subpoena duces tecum to defendant Stefan Oline's current employer, Princeton University (Princeton), requesting his complete personnel file and documentation of any complaint made by or against Oline during his employment or affiliation with Princeton. (ECF No. 32-1 at 9.) Oline moves to quash in part the subpoena pursuant to Federal Rule of Civil Procedure 45 or, in the alternative, moves for a protective order under Federal Rule of Civil Procedure 26. (ECF No. 31.) Dr. Halassa filed a brief in opposition (ECF No. 32), and Oline elected not to file a reply. The motion is fully briefed, and the court heard oral argument on October 26, 2026. At the hearing, the court **GRANTED** Oline's motion. This order sets forth the reasons for the court's ruling in further detail.

## I. BACKGROUND

### A. Alleged Facts[1]

Dr. Halassa brought this suit against Oline, a former postdoctoral fellow at Dr. Halassa's labs at NYU and MIT from 2015 to 2018, asserting three claims: (1) defamation,

[1] The summary of alleged facts is from Dr. Halassa's complaint. (*See generally* Compl., ECF No. 1.)

(2) tortious interference with contract, and (3) intentional infliction of emotional distress. Since Oline left Dr. Halassa's lab in 2018, Dr. Halassa claims Oline has engaged in a years long effort to isolate Dr. Halassa professionally and destroy his academic career and relationships through harassment, interference, and defamation. As part of Oline's vendetta, Dr. Halassa asserts Oline has continually shared false claims about Dr. Halassa on social media, at public events, and to individuals by email.

One such public event occurred at Princeton in June 2025 where Dr. Halassa was asked to participate as a host of a round table at an academic conference. Dr. Halassa was unable to attend the meeting and members of his lab presented on his behalf. Oline, who was not registered for the conference, appeared unannounced at the premises with the goal of interfering with the event and to humiliate Dr. Halassa. On June 8, 2025, during the final event of the conference, Oline entered the venue and distributed printed flyers containing a QR code linking to a website that set forth false content about Dr. Halassa to the conference attendees. The website included the statement that "Michael Halassa is a criminal and a fraud" and claimed Dr. Halassa systematically embezzled research funds through a deliberate scheme, fabricated and falsified research data, intentionally harmed and neglected research animals, and asserted anyone who associated with Dr. Halassa was complicit in his alleged crimes. The website identified Dr. Sabine Kastner of Princeton University as someone who collaborated with Dr. Halassa.

Based upon Oline's presence and interference at the conference, event planners contacted campus police to intervene. Officer Tyler Vandegrift responded to the incident and provided Oline with a case number for his wrongful conduct. Rather than deescalate his efforts following the police response to his presence at the conference, on June 9, 2025, Oline sent a follow-up email to individuals involved in the event, including the event

planners and Dr. Halassa's colleagues reflecting his desire to distribute the information about Dr. Halassa "as widely as possible." (Compl. ¶ 50.) He specifically invited the event promoter, Dr. Kastner, to "join [him] in speaking up against research misconduct and harassment of trainees." (*Id.* ¶ 53.)

A few months later in the fall of 2025, Oline appeared outside of Dr. Kastner's public lecture at Princeton again distributing printed flyers to program attendees containing QR codes linking to the website including the defamatory statements about Dr. Halassa, with the addition of defamatory content concerning Dr. Kastner. Dr. Kastner initially refused to continue with her lecture due to the disturbance. Dr. Annagret Falkner, Oline's supervisor and Assistant Professor at Princeton, confronted Oline outside the lecture hall asking him to stop because his behavior was harming the community, hurting her lab, and putting Dr. Falkner's tenure review at risk. Oline responded that he did not care about each of Dr. Falkner's concerns.

### B. Dr. Halassa's Subpoena Duces Tecum to Princeton University

On September 16, 2026, Dr. Halassa issued a subpoena including the following six requests to nonparty Princeton, Oline's current employer:

> **Request No. 1:** All incident reports, case files, notes, memoranda, correspondence, and any other documents prepared, received, or maintained by Officer Tyler Vandegrift or by any other Princeton Department of Public Safety personnel relating to Oline. This request includes but is not limited to the Incident occurring on or about June 8, 2025 involving Oline as well as any events or activities occurring in August, 2026.
>
> **Request No. 2:** All documents and Communications reflecting any contact between Oline and Officer Vandegrift, or by any other Princeton Department of Public Safety personnel which relate, concern or reflect the Incident occurring on or about June 8, 2025, including any inquiries

> made by Oline on filing complaints with police departments in other jurisdictions.
>
> **Request No. 3:** All incident reports, case files, or other Department of Public Safety records concerning any interaction, complaint, or report involving Oline at Princeton University from January 1, 2019 to the present, including any records of Oline's activities at any event involving Dr. Sabine Kastner, Dr. Michael Halassa and/or any interaction with Dr. Annagret Falkner.
>
> **Request No. 4:** All emails sent, received, or maintained in any Princeton University email account used by Oline that reference, mention, or discuss Michael Halassa, Dr. Halassa's laboratory or Dr. Sabine Kastner.
>
> **Request No. 5:** Oline's complete personnel file maintained by Princeton University, including performance evaluations, disciplinary records, and any separation, resignation, or termination documentation.
>
> **Request No. 6:** All documentation of any complaint, report, or concern made by or against Oline at any time during his employment or affiliation with Princeton University, including any disciplinary action taken or contemplated against Oline.

(ECF No. 32-1 at 8–9.)

Dr. Halassa also attached a copy of the complaint to the subpoena served on Princeton. (*Id.* at 10–41.)

## II. STANDARD OF REVIEW

Rule 45 of the Federal Rules of Civil Procedure governs the issuance of subpoenas, including subpoenas to produce documents by nonparties. Although Rule 45 does not list irrelevance or overbreadth as grounds for quashing a subpoena, the "scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26." *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 240–41 (E.D. Va. 2012). Under Federal Rule of Civil Procedure 26(b)(1), a party may "obtain discovery regarding any

nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). As such, a federal court "may quash a subpoena duces tecum as overbroad if it does not limit the documents requested to those containing subject matter relevant to the underlying action." *Singletary*, 289 F.R.D. at 241; *see also In re Emp. Background Investigations, Inc.*, No. 8:17-CV-261-JDW-MAP, 2017 WL 3722836, at *4 (D. Md. Aug. 29, 2017) ("Subpoenas that are overbroad and that seek information irrelevant to the case should be considered unduly burdensome.") (citation modified).

Additionally, decisions from this circuit "have long recognized that the analysis for whether to quash a subpoena pursuant to Rule 45 or issue a protective order pursuant to Rule 26(c) is essentially the same in this context." *EEOC v. D.R. Horton, Inc.*, No. CV 1:24-2757-GLR, 2026 WL 2576504, at *4 (D. Md. Sept. 1, 2026). Thus, the determination on whether to quash a subpoena or issue a protective order "involves a distinction more about form than substance, should the Court conclude that discovery should be curtailed." *Id.* Accordingly, "[i]f a movant has standing, the proper course of action is quashing the subpoena pursuant to Rule 45(d); if no such standing exists, the movant can obtain a protective order under Rule 26(c)." *Id.* (citing *Singletary*, 289 F.R.D. at 240 n. 2; *In re Verizon Wireless*, No. TDC-19-1744, 2019 WL 4415538, at *6 (D. Md. Sept. 16, 2019)).

"Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena." *United States v. Idema*, 118 Fed. App'x 740, 744 (4th Cir. 2005). As courts have found, a party has an interest in, and thus standing to challenge, non-party subpoenas that seek confidential materials related to the challenging party, such as employment records. *Singletary v. Sterling Transp. Co., Inc.*, 289 F.R.D. 237, 239 (E.D.

Va. 2012) (citing cases); *Papanicolas v. Project Execution & Control Consulting, LLC*, No. CBD-12-1579, 2015 WL 1242755, at *1 (D. Md. Mar. 17, 2025) ("As in *Singletary*, Plaintiff here seeks to quash subpoenas requesting, *inter alia*, former employment records, and thus has standing to bring the Motion.").[2]

## III. ANALYSIS

As Oline objects to the subpoena, he bears the burden of establishing that the challenged production should not be permitted. *See Finley v. Trent*, 955 F. Supp. 642, 648 (N.D.W. Va. 1997) (citing *Castle v. Jallah*, 142 F.R.D. 618, 620 (E.D. Va. 1992)). In the motion, Oline argues that the court should quash Requests 5 and 6 or, in the alternative, grant a protective order because the requests are overly broad, unduly intrusive, invasive of Oline's privacy, and amount to no more than a fishing expedition. (ECF No. 32 at 4).The court finds Oline's arguments to be well-founded.

Turning to Requests 5 and 6, I find they are both overbroad and irrelevant to the claims and defenses in this case. Although Dr. Halassa asserts that Requests 5 and 6 are "narrow and targeted" and appropriately tailored to seek relevant information based upon a "reasonable reading" of the subpoena (ECF No. 33 at 5), a simple reading of the requests demonstrates otherwise. Requests 5 and 6 seek Oline's "*complete* personnel file . . . including performance evaluations, disciplinary records, and any separation, resignation, or termination documentation" and "*all* documents of *any* complaint, report, or concern made by or against Oline at *any* time during his employment or affiliation with Princeton University, including any disciplinary action taken or contemplated against Oline"

[2] Dr. Halassa does not contest Oline's ability to challenge the Princeton subpoena. In any case, because Dr. Halassa seeks Oline's employment records with Princeton, I find Oline has standing to challenge the subpoena requests at issue. *See Singletary*, 289 F.R.D. at 239–40(finding plaintiff had standing to challenge a subpoena duces tecum seeking plaintiff's employment records).

without sufficiently linking the requests to the claims in this case. (ECF No. 32-1 at 9) (emphasis added).

As for Request 5, the request for Oline's "complete" personnel file "could lead to the production of medical information, social security numbers, payroll information, income tax information, information about family members, and other documents completely extraneous to this litigation." *Singletary*, 289 F.R.D. at 241 (quashing subpoenas to plaintiff's prior employers seeking plaintiff's "complete employment file" finding the request overbroad and not tailored to a particular purpose); *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 255–56 (S.D. Ohio 2011) (finding subpoenas to be overbroad because "compliance with the subpoenas [would] result in defendants receiving a plethora of documents, the vast majority of which would be completely unrelated to any possible issue in [the] case"). Although Dr. Halassa notes the inclusion of "performance evaluations, disciplinary records, and any separation, resignation or termination documentation," he does not limit his request to these documents or, more importantly, tailor it to relate to the claims here.

Request 6 is also overly broad. As drafted, if Princeton were to produce documents in response to Request 6, Dr. Halassa could receive a number of documents unrelated to the claims and defenses in this case that infringe not only on Oline's privacy, but other individuals, including other Princeton employees, who are not involved in this litigation. *See Kovalenko v. Kirkland & Ellis LLP*, No. 22-CV-05990-HSG (TSH), 2024 WL 664691, at *7 (N.D. Cal. Feb. 16, 2024) (quashing subpoenas to plaintiff's prior employers requesting documents related to complaints filed by and/or against the plaintiff noting the requests were invasive of plaintiff's privacy and privacy of non-parties and were not directly relevant to the case).

During the hearing, counsel for Dr. Halassa argued that attaching a copy of the complaint to the subpoena narrows the subpoena requests as it provides Princeton with an outline of the underlying events involving Dr. Halassa and the individuals associated with him, such as Dr. Kastner. While attaching a copy of the complaint to the subpoena may help Princeton understand the case context, it is not a substitute for appropriately tailoring a subpoena in accordance with Rules 26 and 45.

Additionally, to provide further perspective, Requests 1–4 are more narrowly tailored and relevant to the allegations asserted in Dr. Halassa's complaint, including references to temporal parameters and the individuals associated with this litigation. As such, it is no surprise that Oline did not seek to quash these requests. In fact, counsel for Dr. Halassa admitted during argument that Requests 1–4 were intentionally more narrow in scope and Requests 5 and 6 were included as a "catch-all" to encompass a broader collection of information about Oline. Such "catch-all" discovery requests, if not relevant or proportional to the claims and defenses in the case, are not permissible under Rule 26.

## IV. CONCLUSION

For the foregoing reasons, Oline's motion to quash, in part, Dr. Halassa's subpoena duces tecum to Princeton is **GRANTED**. Princeton is directed not to respond to Requests 5 and 6. Oline's request for attorney's fees is denied.

It is so **ORDERED**.

ENTERED: November 5, 2026

C. Kailani Memmer
United States Magistrate Judge